Our next case is GoPro, Inc. v. Contour IP No. 17-1894. Our next case is GoPro, Inc. v. Contour IP Holding LLC. The question in this case is a simple legal question. Does the distribution of hundreds of copies of a product catalog without restriction at a trade show attended by over 1,000 distributors of those products qualify as a printed publication? Is it a legal question or is it an evidence question? Because it sure seems to me like you could have done just a wee bit more to prove that this went to the public in a way that a skilled artisan could have found it. I agree with that statement, Your Honor, but the answer to your question is... Was there no attempt to get a list of attendees from this trade show? Well, we have a list of who presented at the trade show. We do not have a full list of attendees. That's correct. The answer to your question, Your Honor, is it's a legal question reviewed de novo. What this court said in both Klopfenstein and Cronin is that where the facts are not in dispute, whether those facts qualify as a printed publication is a question of law reviewed de novo. But the inference from the facts not in dispute seems to me a little bit difficult because I'm not sure that I would have come up with the same inferences the board drew from this. They seem to be very strict with you, but I'm also not sure that that inference lacks substantial evidence. Well, I think, Your Honor, that the inference, the ultimate question inference, is a question of law for this court, not for the board. What this court said in Klopfenstein is that if there is no dispute as to what the facts are, whether or not those facts rise to the level of a printed publication is a question of law and it is reviewed de novo. But isn't the question here still... I don't want to get hung up in this factual stuff too long, but isn't the question, even with the undisputed facts, is there a showing that a skilled artisan would have been able to access this publication with due diligence? And based upon this fact, the board drew the inference that you didn't show that any skilled artisans even attended this show, that it might have just been salespeople and that it was a closed show and the like. Isn't that a factual inference that they're drawing from that? The fact that it is a closed show is not one we dispute. That's correct. And it is right that we did not present evidence that people of skilled in the arts, specific people of skilled in the arts, attended the show. I think that doesn't matter, Your Honor, for two reasons. First, it doesn't matter because this court's precedents don't require that the people in attendance at a trade show be people of skill in the art. It's true that this court has talked sometimes interchangeably about people concerned with the art, people interested in the art, people skilled in the art, and sometimes people interested in and skilled in the art, sometimes in the same opinion. But if you look at the cases and what they actually hold, what the cases actually hold is that having skill in the art is sufficient, but having interest in the art is also sufficient. Here's the other problem with this. This was not a consumer electronics trade show, right? That's correct. I may be wrong, but it was more like a recreational vehicles trade show. If you had a consumer electronics show, the inference might be strongly in your favor. If you took this to a rodeo, the inference would probably be really strongly against you, that this would be somebody interested in this type of technology. It seems like we're somewhere in the middle. I think, Your Honor, that in this case, it's a harder inference to draw that some of these people are of skill in the art, but it is perfectly reasonable to draw the inference that they are interested in the art. These are distributors of products like the GoPro cameras. These are people who went to the trade show precisely so that they could find products that they could turn around and sell to their customers. Are you saying that for purposes of determining whether the prior art was published, that it has to only be shown that somebody interested in the art had access, or it was published to people or persons skilled in the art. No, interested in the art, but to show the ultimate legal determination on the marriage here, then you have to show somebody skilled in the art. We would have to show, if it were an issue. Available. I'm sorry? That it was available to them. Available to, that's right. If enablement were an issue, we would have to demonstrate that it would enable one of skill in the art to make or use the invention, that's right. But I think this court's case law makes clear that disseminating or making available product catalog to people interested in the art, even if they are not of skill in the art, is sufficient. So the cases I would cite for that proposition are first and foremost Orion IP. In Orion IP, the product catalog was a sales brochure for a software car part inventory management system. It was demonstrated to car dealers. Now, car dealers are interested in car parts management systems, but they're not software engineers. They don't know how to write these things. They are not people of skill in the art. Nonetheless, this court said it was sufficient because you had demonstrated this to people interested in the art. Similarly, in the Iovate Health case, the Flex magazine, which is a magazine for bodybuilders, ran an advertisement with nutritional supplements. The bodybuilders were not people of skill in the art. They weren't chemists, but they were people who were interested in, who might buy the product. And finally, in Jachmus v. Levitin, Judge Lurie. I was surprised that the argument wasn't made that the attendees at the trade show were people that would be interested in this particular product. I mean, I've seen rodeos where the rodeo, the cowboy is wearing a GoPro up on his hat. I've seen tourists walking around here outside the monument, and they got GoPros stuck on there. So it would seem to me that a tourism trade show may even be a facility or the type of event that would attract somebody interested in this art. Why didn't you put that type of evidence out there? Well, I agree with your conclusion, Your Honor, and I think that we did. What we demonstrated is that the people who attended this trade show were precisely people interested in the art. They were distributors of products for motorcycle enthusiasts. They wanted to buy cameras that motorcycle enthusiasts could attach to their helmets, could attach to their motorcycles, so they could. Let's turn away from the show for a minute, because you argue, at least, that the PTAB completely ignored your arguments relating to the catalog being distributed after the show. If we agree with you on that, should we remand the entire decision for additional fact-finding? I mean, where do we go? Yes, Your Honor, if you agree with us on that, you do not need to resolve this question of skill in the art versus interest in the art.  I think remand is appropriate, because the board got hung up on this question of is this a printed publication, which frankly was only a minor issue going into the case. It didn't end up resolving any of the merits of the obviousness analysis, and we think under the Chenery Doctrine, the appropriate thing to do is not make fact-finding here, but send it back to the board to make fact-finding on the merits of the obviousness doctrine. I will note that the two halves of the argument also can work together. Because this is a sales catalog, the point of a sales catalog is to be disseminated as widely as possible, because GoPro wants to sell products. So I think both distributing it to hundreds of distributors at the Tucker-Rocky Show and allowing those people to take it without restriction, do what they want with it, which is presumably to order products, and mailing it, putting it on the website after the Tucker-Rocky Show, all of those things are part and parcel of what you would expect a trade show sales catalog to do. How much to the publication argument that you're making is added by the claims that this too was published on the website? Let's say you only had that, that you appeared today and that's all you had. I think publishing it on a website that was accessible to people of interest would itself be sufficient, so I think that would be enough. It is right, as Judge Hughes indicated at the outset of this argument, that the evidence in support of that is not as fulsome as the evidence in support of the Tucker-Rocky Show. But on the other hand, putting it up on a public website is not a closed show. It's open to anybody skilled in the art who's interested in finding out about it. That's correct, Your Honor, and I think that is... Your problem is one of evidence. The record seems to be lacking as to whether the sufficiency of the publication and how long it was up there. There's no screenshot of the publication on the computer. It is true that there is no screenshot, and I wish there were, frankly, but I think it is also true that this Court's precedents don't require that. But the Board had problems with the website evidence because it's pretty conclusory. I mean, you said you put it on a public website, but I understand that you can put something... If you physically put something on the website, it may not be necessarily available to the public because it may not be indexable or searchable by some search engine. So that seems like an odd way to say you've put it on a public or you posted it to a public website, but it does seem that that's what the Board faulted you for in not explaining that it was put on the public website in a way that would have been readily accessible. I think that's correct, Your Honor, and I guess what I would suggest is that because this is a sales catalog, common sense indicates that the... Well, I don't disagree with you, but this is all... I mean, this still sounds very fact-based to me, and on a substantial evidence standard, if the Board's reasoning is you failed to show that it was in a publicly accessible link, how does that lack substantial evidence, even if it's a very strange inference to draw? Well, I think, Your Honor, again, I think first that this is not a question of substantial evidence. I think the reason it's not a question of substantial evidence is that they didn't present any evidence on the other side. They didn't, as the case comes before the Court, challenge any of the evidence we did present. So what we do have is testimony by Mr. Jones, which the Board expressly said it had no reason to doubt the truth of his testimony. We have the catalog itself as corroboration of that testimony, and we have what the Court in the Jokmas case said was frankly just common sense, that in the Jokmas case, which is extraordinarily close facts to this one, the Court said no one can seriously doubt that... Suppose that such a document printed in quantity was intended to be kept secret. Its whole purpose was to be spread broadcast as far as possible, to prove that no accident did happen and that it did reach its destination. We have, it's true, only oral, though entirely disinterested testimony. But it's a mistake to assume that even under the extraordinarily severe tests applied to the proof of anticipation, every step must be buttressed by documents. The Court... Why do you think the Board was so stringent in evaluating whether this was a printed publication? I don't know the answer to that, Your Honor. I think the closest I could say is that the Board read some of the language in this Court's opinion saying skill in the art. It concluded that skilled in the art was a requirement, and that that sort of led it down, frankly, the wrong path. That's a path which, by the way, would mean that releasing a product at a trade show would almost never generate prior art or start the 102B clock running. Every patent lawyer in the country thinks otherwise. That's just not the way of the world. You're into your rebuttal time. Do you want to save that? I will happily do that, Your Honor. Okay. Thank you. Counselor Schoenhardt. Thank you, Your Honor. Good morning. May it please the Court. Let's talk about evidentiary issues when we were over there on the other side. In the red brief, right at the beginning, you state GoPro failed to establish that the so-called GoPro catalog is a prior art publication. I assume you had a reason for saying so-called. What makes you think it wasn't a catalog? Oh, I refer to it as the so-called GoPro catalog, not because it is not on its face a catalog, but because there is loose reference to the GoPro catalog throughout these proceedings, both below at the PTAB and here at this Court, where what is put forward as the GoPro catalog is an undated document that has no real initial. Okay. But the contents look like a catalog. The contents generally look like a catalog. Okay. No, no. Hang on. Then let me turn to that question. You raise, at page four, you raise those evidentiary foundational questions about dates and so on. Did you make foundational objections as to date and so on? We did, Your Honor. Where is that? Ultimately, the Board did, in fact, determine that the GoPro catalog was authentic. We ruled our objections on the basis of authenticity. Well, where were your objections? I didn't see them. We filed objections to the original declaration of Damon Jones and then subsequently objected to the authenticity of the GoPro. Are you still maintaining those foundational objections on appeal? We believe that they are foundational objections, but on appeal, this Court would ordinarily defer to the Board's determinations on authenticity. So you're not maintaining them? Because you weren't making them. That's my point. Well, I appreciate it, Your Honor. The relevance of the date still can carry forward, but that does not necessarily become a dispositive factor as to the authenticity of the document, rather how the Board might weigh the factors of public accessibility. For instance, Mr. Lemley refers repeatedly to the Jockmas case from the Second Circuit back in 1928, and one of the things there the Second Circuit found particularly probative was that the date on the catalog that was distributed further corroborated the testimony that was there presented. Here, we have no such corroboration. Why didn't you depose or declare it then? Respectfully, Your Honor, that would be a subject of work product as to the decisions made in the course of a proceeding. Is there a corroboration requirement? No. Is there a corroboration requirement? I mean, you have the declaration, and the Board didn't doubt its credibility. In some areas of the law, when we just have testimony, there's a corroboration requirement. But I don't see one here. Are you arguing that the declarant's testimony can't on itself be sufficient evidence? Well, here, Your Honor, our primary objection to the testimony of Mr. Jones was, in fact, that it was hearsay testimony. Right, but the Board didn't agree with you on that. Ultimately, Your Honor, that's correct. And so here, if we move forward to whether the Board's ultimate fact findings— So we accept his declaration as true? If we accept his declaration as true, then— If you accept his declaration as true as to both the trade show, is he also the declarant for the website? He is also the declarant for the website. If you accept everything he said as true, why aren't those facts sufficient to show that this is a printed publication? First, let's parse this out into the trade show and the website, and I think we do need to walk through those separately. In large part because that's what the Board did, what the Board was entitled to do, and the Board, as to the website issue, the second of those, expressly found that it was not going to consider anything other than what happened at the Tucker-Rocky Road show. And was that—and our question is, was that error? No. And if it was, what do we do about it? It certainly was not error. So under 35 U.S.C. 312 A.3, the petitioner is obligated to point out with particularity the evidence that supports the grounds for the challenge to each claim. Here, the petitioner did not point out with particularity in its petition that it was relying on anything other than distribution at the Tucker-Rocky Road show itself in support of the public availability of the GoPro catalog. That's exactly what happened in the petition. That's exactly what the PTAB found. And on the basis of that, the PTAB said— They said they publicly posted the catalog on a publicly available website. Mr. Jones stated that in his declaration. That was not part of the petition to the Board. The petition itself did not rely on the website. The petition itself just relied on distribution at the Tucker-Rocky Road show. The Board said, as a result, we are entitled not to consider anything that was not actually particularly pointed out in your petition. We are not considering that. That's in the appendix at page 22 footnote 8 and at 53 note 8. This is actually something that GoPro sought reconsideration on. And the Board expressly denied reconsideration on exactly this point. It said, we've already told you this was not in your petition. We are not considering this. That's in the appendix 71 to 72. This is ultimately a functional finding of Weaver. And this Court should not— This Court has found a research paper, which was orally presented during a conference attended by 50 to 500 cell culturists, a printed publication. In light of that kind of precedent, and there's of course other, what's your response to GoPro's main contention that the PTAB's requirement that the trade shall be advertised and accessible to the general public in addition to trade association members is contrary to our precedent? That seems to be the core. It does, Your Honor. And there are actually two responses. The first response is that this could be approached as a question of, is there general public availability? If something is generally publicly available, it's out in broad circulation, anybody could readily have access. Then it's presumed that persons who are on a scale or a subset of the general public, it becomes a non-issue pretty quickly. Where we need to focus on things— Which is where the website is. Which is where a website can be. And on that, this Court has advised parties to be careful as to providing sufficient evidence of public availability through a website, for instance, in the SRI decision. But if you have complete broad circulation, ready indexing, ready availability, then we get there pretty easily. If we don't have that level of public availability, then we need to look at what subset of the public was in fact in attendance at a particular conference, or to whom of the subset of the relevant public was the potential reference disclosed. Here, as Judge Hughes pointed out during Mr. Lemley's opening argument, this isn't CES. If this was the Consumer Electronics Show, then we probably would be in a very different position here today. Wasn't it an outdoor show? It was an outdoor show dedicated to outdoor motorsports. There is no showing on this. There is substantial evidence to find that there is no showing that was reasonable for the Board to find. When you look at the catalog, it's filled with pictures of the GoPro camera mounted on vehicles and handlebars and things. Is that the type of public that would be interested in the show? Well, first, there's two levels here again. The first level is that it's not the Board's imposition of a requirement. It's actually this Court's precedent that the availability needs to be of persons interested and ordinary skill in the art. That goes back to Henry Weyer and carries forward as recently as, for instance, Blue Calypso. There have been times where the language, persons interested in the art, has been cited without the remainder of the expression and ordinarily skilled, but it has been this Court's requirement that references must be available. The opposing counsel is right. That is, sometimes it's in all those phrases or in one opinion used interchangeably. I'm not sure it's fair to say that they're completely interchangeable, but that will actually get to my second point. As to whether they're completely interchangeable, this Court's rule of precedent is pretty strict. We go to the past precedent, and unless and until that is overturned by this Court en banc, that remains the precedent. In Henry Weyer, the CCPA set forth the precedent that it needs to be available to persons interested and ordinarily skilled. The CCPA's precedent became the precedent of this Court through South Tech in 1984, I believe it was. You're familiar with the phrase sub silentio. And it carries forward to this point. Let's just assume that interested is good enough, that we don't have to find that skilled artisans were at this trade show, that interested people were at the skilled trade show. Why is it a trade show where, first of all, GoPro showed up? I mean, by definition, they're not going to show up at a trade show where nobody's interested in their products. They handed out hundreds of catalogs, which itself has to demonstrate a high level of interest. Isn't that enough to show people that were interested in their products have a copy of this printed publication? I don't believe so. And actually, I think the language Your Honor selected helps make the point I'm about to make. I said that there was some difference between persons ordinarily skilled and persons interested, but that it wasn't just a clear demarcation. There is a reason why these concepts can be merged at times. The notion of persons interested in the art is not persons interested in a product they find on a shelf in the supermarket. It's persons interested in the art, not the product, the art. I may be a potential consumer for a product, but that does not make me a person interested in the art in which that product exists. The cases cited by Mr. Lumley during his argument largely involved distribution to people within the trade, within the field of art which matters. For instance, if you were at a conference where GoPro was in attendance and Contour was in attendance, somebody from Contour who was not himself a person of ordinary skill, but was clearly interested in the art, may actually then pick up a catalog, take it back home, give it to his competitive intelligence folks, give it to his engineers, and you have a reason for a court to readily believe that you are going to have dissemination into the world of skilled artisans pretty rapidly. In the real world, there's also a concept of cross-fertilization in which somebody interested, a member of the public, picks up that catalog and takes it to their local dealer who says, oh, this is interesting, and passes it on to a competitor. Says, hey, do you guys have something like this? You're my normal supplier. And that has to be taken into account, how the real world works. There are aspects, of course, to how the real world works. But in this case, we're dealing with a static record and evidence. And there was no evidence put forward that these catalogs were distributed to anyone actually interested in this field of art that would then take it onward. There was no argument. There's evidence that hundreds of the catalogs were distributed at the trade show. And what's the level of skill in the art we're talking about here? Isn't that a BA in electrical engineering? We're looking at a degree in electrical engineering and computer science. What proof did you offer and put in that showed that somebody with a BA in electrical engineering would not be interested in this show? Your Honor, I don't think it was our burden to put forward information or evidence as to— No, but it's your burden to rebut evidence. But here, Your Honor, there was no evidence to rebut. And that's precisely the point the board ultimately reached. You have a catalog and you have a trade show, and you have what's happening here. I mean, we're looking at a record that basically is one-sided. I agree, Your Honor, but that's the challenge of proving a negative. Where we have a non-public trade show, as Mr. Lemley agrees— So if this was a public trade show, would the analysis be completely different, even assuming that all the attendees were the same? If it was a public trade show, then the analysis would at least be somewhat different. The reason it would be somewhat different is that you would then have to make a presumption that a broader set of the public had access to the trade show. This is what baffles me about this case. I assume your argument would be if somebody took copies of this GoPro catalog to a football stadium on Sunday and handed it out to 50,000 people, that that's public. So you've got a presumption that it's a printed publication, right? Effectively, yes. Even if no football fans are interested in this art whatsoever. Whereas you have a specialized trade show that's non-public, and you have people that are clearly interested in the product, which at least raises an inference that they're interested in the art. And so now you're saying this because it's non-public, even though it's much more specialized, it doesn't meet the printed publication thing as opposed to 50,000 random football fans. I think your honor is actually getting to exactly the right point. It is a function of where the burden lies. Where something is distributed broadly to the public, the burden would then shift, if you will, to us trying to push back. But what does broadly to the public mean? I mean, maybe my hypothetical is wrong. Let's assume instead of a football match on Sunday, we're talking about a – well, I'm not going to use that because that would get me in trouble. A sporting event where only 1,000 people attended, the exact same amount here, but it was open to the general public. Would the presumption still arise that if this was handed out to 1,000 people or a couple hundred of the 1,000 people that attended a sporting match open to the general public, would it be a printed publication? It may well be. And I say may well be because one of the things this court has consistently cautioned is that every case on the issue of 102B needs to be decided on its facts, on the very specific facts of its case. And we might learn other things about the facts there. And I realize you're asking me to decide on a specific hypothetical, but there could be other facts related to that hypothetical that could shift this. Well, there aren't any other facts. I gave you all the facts. That's the point of a hypothetical. If that's all the facts we have, then I would say I would be inclined to presumptively find that we're going to say that that has been opened up to the public. Yes. Here we have a nonpublic trade show, and so we need to know who was at that trade show. But people that show up at trade shows are by definition interested in the products. And I know you want to make a distinction between product and art. I'm not sure that I buy that. But they're by definition interested in what's being showed and passed out and the like at a trade show. Your Honor, here we're again getting back to issues of fact. And on the facts, there are no facts that say that people that were at this trade show were in fact interested in action cameras. Except that two or three hundred people picked up the catalog. Well, or were handed the catalog. I've been handed many things at trade shows. Why isn't that enough? Circular file. Why isn't that enough? Because all we have in terms of facts is that the people at this trade show would have been interested in outdoor recreational motor sports. And accessories. And accessories. That does not necessarily get us to the point, and the board is a matter of facts. By definition. So supposers, we're talking about a medical or chemical compound. And I give a seminar. And I have a PowerPoint. And I have three slides that identifies this chemical compound that's at play. And we go through that. Do I have to show that everybody in the audience understood the chemical compound or that they were even awake? Isn't it enough that I published the chemical compound on a PowerPoint and that the attendees who were there were there because they're interested in that type of topic? Respectfully, Your Honor, that was a challenging one because a femoral display on PowerPoints has often been found not to be a printed publication. But if there was an associated hard copy of the slide. Well, let's say I handed out copies of the PowerPoint. Then presumably the attendees at that conference, and this court has had cases looking at conferences of that type. Presumably the attendees of the conference would be sufficiently persons interested in the art. And most likely we would have persons of ordinary skill in the art. How is that different from this case? Because, Your Honor, the board expressly found as a matter of fact that there had been no evidence and no showing that any persons of ordinary skill in the art were in attendance at this show. We have no reason to believe that any persons even generally interested in the art were in attendance at this show. And this isn't ultimately a question of law. This is ultimately a question of fact. Two key cases for this court to consider. The first, precedential. The second, admittedly non-precedential, but recent and so worth at least taking a peek at. Norian, that's at 363 F3 at 1330. The Norian decision directly addressed the issue of substantial evidence, whereas here there had been a finding below that there had been a lack of evidence. It wasn't disputes of fact, it was how to weigh those facts. And substantial evidence dictated an affirmance. Okay. Most recent. We have your argument. I think you're over your time. Thank you, Your Honor. Thank you. Counsel, you have two and a half minutes. If I disagree with you that this is a legal question, and let's just talk about the trade show, not the email or the website. If I disagree with you that this is a legal question, how would you have me write it that there's a lack of substantial evidence here for the trade show? Your Honor, I guess what I would say is the following. First, the standard is preponderance of the evidence. And the fact that the evidence is what it is, that no one is disputing whether or not this is the catalog, despite some artful statements by my learned colleague, means that you can look at the evidence and you can say, all right, was it reasonable for the board to weigh this evidence in the way that they did? Or was it more reasonable to conclude that this catalog was, in fact, distributed to those of interest in the art? The problem is it's not just more reasonable. I mean, the substantial evidence standard is much, much harder for you than that. I agree. It's essentially that no reasonable person would come to the board's conclusion. And even if all of us and most people would come to your conclusion, is there no evidence that would support a conclusion that this wasn't a printed publication distributed at the trade show? I think on the trade show issue, if you believe there is substantial evidence, then it's going to matter how you resolve the legal question of whether it's interested in the art or skilled in the art. If you agree with the board on the unquestionably legal question of skill in the art and you think it's substantial evidence, then I think we'd have trouble. Given what's up all over YouTube, can we take notice that if you're a dealer who sells to people who are interested in outdoor motorsports, that they're probably the kind of people who want to record that? Absolutely. Because they do. Absolutely, Your Honor. And I think this court has asked, and at the board, Judge Arbus asked the question, doesn't the fact that GoPro attended the trade show, isn't that some evidence people would be interested in their product? Mr. Schonhardt says there may be people interested in the product at the trade show. So I think it matters if we think interested is the right test. No reasonable board could conclude that there was no one interested in this at the trade show. There were hundreds of copies distributed. They were distributed without restriction. It was a sales catalog put on a website. Were any of your competitors at the trade show? I believe the answer is yes, Your Honor. We did have a list of presenters, of people who had booths. We didn't have a full list of attendees, but we did actually submit a list of those who had booths to sell products. So I think the answer is it's hard to imagine that a sales catalog like this… You have someone that has a booth. Let's say your competitor has a booth. Is that someone interested in the art? Absolutely. Probably also someone of skill in the art, although we did not present evidence on that. Because, frankly, I don't think anyone at the time that this was going on thought that this was a big issue, simply because everyone understood trade shows were the sorts of things that could be the basis for a printed publication until the sports decision. Can I just close the loop, because your friend raised the point that I had appreciated before, that the website information wasn't in your petition, and that that's the reason the board didn't consider it. Is that correct? Not exactly, Your Honor. The petition did not affirmatively say website. It instead cited to the paragraph in the Jones Declaration, which did include it. But everyone knew that this was an issue. They briefed it in their preliminary response. It was explicitly called out in the board's institution decision. It was briefed in their response. So you don't think he waived it? Absolutely not, and neither does the board. If you look at what he pointed to, which is footnote 8, footnote 8 does not say this is waiver. Footnote 8 says, though it wasn't in the petition, the Jones Declaration does say X and Y, and then it goes on on the merits to resolve the question of website. I don't think anybody thought there was waiver, and there certainly was no lack of notice. Okay, you're out of time. Do you want to conclude? No, Your Honor, I'm fine. Thank you. All right, thank you.